## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 11-24424-CIV-ALTONAGA/Simonton

**DAVID MATTHEWS**,

     Plaintiff,

vs.

**WHITEWATER WEST INDUSTRIES, LTD.**, *et al.*,

     Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** comes before the Court on Defendant, Whitewater West Industries, Ltd.'s ("Whitewater['s]") Motion to Dismiss . . . ("Whitewater Motion") [ECF No. 33], filed on January 25, 2012; and Defendant, Cloward H20, LLC's ("Cloward['s]") Motion to Dismiss . . . ("Cloward Motion") [ECF No. 42], filed on February 9, 2012. The Court has carefully considered the parties' written submissions and the applicable law.

### I.      BACKGROUND

This is an action brought by a United States citizen arising out of an incident that occurred at the Atlantis Resort ("Atlantis") in Nassau, Bahamas. (*See* Compl. ¶ 16 [ECF No. 1]). The Plaintiff, David Matthews ("Matthews"), was a resident of the State of Ohio at the time of the accident and is currently a resident of Arizona. (*See id.* ¶ 4). Whitewater is a Canadian corporation registered to do business in Florida and conducting business in Florida. (*See id.* ¶ 10). Cloward is a limited liability company based in Utah but incorporated in Alaska, and it has a registered office and agent in Florida and conducts business in Florida. (*See id.* ¶¶ 5–6). The

other two named Defendants are Edward D. Jones and Associates, Inc. ("EDSA"), a registered Florida corporation (*see id.* ¶ 7); and HKS Architects, Inc. ("HKS"), a Texas corporation registered to do business in Florida and with an office in Florida (*see id.* ¶ 8).

On December 8, 2011, Matthews filed a negligence suit against Whitewater, Cloward, EDSA, and HKS based upon an injury he suffered at Atlantis. In response to Plaintiff's claims, Whitewater filed a Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* on January 25, 2012.[1] On February 9, 2012, Cloward filed a similar Motion to Dismiss Under the Doctrine of *Forum Non Conveniens*.[2] Neither EDSA nor HKS is seeking to dismiss the Complaint, but these Defendants do raise the issue of *forum non conveniens* as an affirmative defense in their respective Answers. (*See* EDSA Ans. ¶ H [ECF No. 4]; HKS Ans. ¶ 11 [ECF No. 15]). At a status conference held on January 31, 2012, the Court permitted discovery on the *forum non conveniens* question. (*See* [ECF No. 38]).

## A.    The Accident

The Complaint alleges that on December 11, 2009, Matthews suffered an injury at Atlantis while riding the Challenger Waterslide ("Waterslide") when his legs hit the bottom of the Splash Down Pool ("Pool"). Specifically, Matthews alleges he was a guest of Atlantis at the time of the accident, and that Atlantis operates and supervises the use of the Waterslide on its premises, encouraging guests to use it. (*See id.* ¶ 16). The Waterslide features two adjacent waterslides that allow guests to race to the bottom. (*See id.* ¶ 18). Matthews alleges that prior to using the Waterslide, an Atlantis employee provided him with instructions regarding how to properly use it. (*See id.* ¶ 19). At the end of the ride, Matthews' legs hit the bottom of the Pool

---

[1] Whitewater's Motion was fully briefed on March 21, 2012. (*See* Response . . . ("Resp. to Whitewater Mot.") [ECF No. 51]; Reply . . . ("Whitewater Repl.") [ECF No. 69]).

[2] Cloward's Motion was fully briefed on April 9, 2012. (*See* Response . . . ("Resp. to Cloward Mot.") [ECF No. 70]; Reply . . . ("Cloward Repl.") [ECF No. 72]).

causing a "severe fracture of [Plaintiff's] leg referred to as a tibia plateau fracture." (*Id.*).

**B.     The Defendants**

1.     Whitewater

Whitewater designs, manufactures, and sells waterslides, including the Waterslide. (*See id.* ¶ 51). Whitewater designed and manufactured the Waterslide in Canada and then shipped it to the Bahamas where it was installed. (*See* Kwasnicki Aff. ¶ 5 [ECF No. 33-1]). Approximately 20 Whitewater employees worked on the design of the Waterslide, and most of these employees currently reside in Canada. (*See* Kwasnicki Dep. 33:3–9 [ECF No. 52-1]). The Whitewater employee who served as the project manager for the Waterslide no longer works for Whitewater, and it is unknown where she resides. (*See id.* 9:5–16).

The only documents related to the Waterslide that Whitewater has in its possession are the contract for the construction of the Waterslide and various design drawings. (*See id.* 11:21–22). The project binder, which had various project documents and is usually kept indefinitely by Whitewater, has been misplaced, lost, or destroyed. (*See id.* 12:6–25). Although Whitewater did not design the Pool, Whitewater "probably had some input in the [P]ool to make sure it was long enough and met the geometry for the particular slide that was going into" the Pool. (*Id.* 15:18–22). Whitewater has sales offices in Virginia and Colorado (*see id.* 25:3–14), and has performed between 10 and 100 projects in Florida (*see id.* 26:8–10). Whitewater has also defended various patent infringement suits in the United States. (*See id.* 28:24–29:6).

2.     Cloward

Cloward was responsible for the design and construction of the pool facilities located at Atlantis, including the Pool.[3] (*See* Compl. ¶¶ 21, 24; Cloward Aff. ¶ 3 [ECF No. 42-1]).

---

[3] Although Cloward points out that Cloward and Associates PC ("CA"), and not Cloward, performed the design work, Cloward and CA are one and the same for purposes of the *forum non conveniens* analysis.

Specifically, Cloward employees designed the Pool, and conducted project review and supervision of its construction in the Bahamas.  (*See* Compl. ¶ 25; Cloward Aff. ¶ 9).  All of the design work regarding the Pool was performed in Utah, and the individuals involved with the pool design who are still employed by Cloward reside in Utah.  (*See* Cloward Aff. ¶¶ 7, 8).  The Cloward employee who served as the project manager for the Pool no longer works for Cloward, but he maintains a level of ownership with the company.  (*See* Cloward Dep. 13:2–7).  At least three of Cloward's project engineers who worked on the Pool and spent a significant amount of time at Atlantis during the Pool's construction no longer work for Cloward; however, they reside in the United States.  (*See id.* 15:3–16:10).  Two of these former employees likely were involved in the testing of the Pool.  (*See id.* 18:24–19:2).

Cloward has electronic files of the design drawings and specifications for the Pool, in addition to four boxes of hard copy material, which consist of faxes and site documents that were produced during the construction phase of the Pool.  (*See id.* 11:11–16).  Cloward currently has two projects pending in Florida.  (*See id.* 18:3–9).

3.   EDSA

The Complaint alleges that EDSA is the design team leader for all site work pertaining to Atlantis' aquatic and pool facilities (*see* Compl. ¶ 12); it designed, planned, and prepared construction documents for all water features of the Pool (*see id.* ¶ 31); and provided construction of the water park facilities at Atlantis (*see id.* ¶ 32).  Jurisdictional discovery has revealed that EDSA's role was limited to designing the decorative patterns surrounding the edge of the Pool rather than designing the Pool itself, and that EDSA did not have anything to do with the construction of the Pool.  (*See* EDSA Ans. to Interr. 3 [ECF No. 69-1]).

---

In July 2010, Cloward purchased the assets of CA, and the two companies appear to be identical other than the change in corporate structure.  (*See* Cloward Dep. 7:14–10:7 [ECF No. 71-1]).  In any event, Cloward has not sought to dismiss the case based upon its lack of connection to the present dispute.

    4.    <u>HKS</u>

The Complaint alleges that HKS was the architect responsible for the design, engineering and plans for construction of the Pool  (*see* Compl. ¶ 40); supervised the implementation of its design of the Pool (*see id.* ¶ 43); was responsible for reviewing on-site progress of the Pool  (*see id.* ¶ 42); and had architects, engineers, technicians and administrators work on the construction of pools at Atlantis (*see id.* ¶ 45).  Jurisdictional discovery has revealed that while HKS was the project architect for Atlantis, HKS did not design or construct the Pool or Waterslide.  (*See* HKS Initial Disc. 3 [ECF No. 61]).

**C.    The Legal Claims**

Matthews' Complaint states five claims for relief.   Count One alleges Cloward negligently designed the Pool.  (*See* Compl. ¶¶ 20–30).  In particular, Matthews alleges that based upon Cloward's role in the design and construction of the Pool: (1) Cloward owed Plaintiff a duty to properly design the Pool to avoid dangerous conditions (*see id.* ¶ 26); (2) Cloward breached its duty when it failed to properly design the Pool, or alternatively, when it failed to properly supervise its construction (*see id.* ¶ 27); and (3) Cloward's breach of its duty was the direct and proximate cause of Plaintiff's harm, and therefore Cloward is liable to Plaintiff for damages (*see id.* ¶ 30).

Count Two of the Complaint alleges EDSA negligently designed the Pool.  (*See id.* ¶¶ 31–39).  Specifically, Matthews alleges that based upon EDSA's role in the design and construction of the Pool: (1) EDSA owed Plaintiff a duty to properly design the Pool to avoid dangerous conditions (*see id.* ¶ 33); (2) EDSA breached its duty when it failed to properly design the Pool, or alternatively, when it failed to properly supervise its construction (*see id.* ¶ 36); and (3) EDSA's breach of its duty was the direct and proximate cause of Plaintiff's harm, and

therefore EDSA is liable to Plaintiff for damages (*see id.* ¶ 39).

Count Three of the Complaint alleges HKS negligently designed the Pool. (*See id.* ¶¶ 40–50). In this regard, Matthews explains that based upon HKS' role in the design and construction of the Pool: (1) HKS owed Plaintiff a duty to properly design the Pool to avoid dangerous conditions (*see id.* ¶ 46); (2) HKS breached its duty when it failed to properly design the Pool, or alternatively, when it failed to properly supervise its construction (*see id.* ¶ 47); and (3) HKS' breach of its duty was the direct and proximate cause of Plaintiff's harm, and therefore HKS is liable to Plaintiff for damages (*see id.* ¶ 50).

Count Four of the Complaint alleges a defective design claim against Whitewater for its role in the design of the Waterslide. (*See id.* ¶¶ 51–58). Matthews alleges: (1) Whitewater defectively designed the Waterslide in such a way that rendered it unreasonably dangerous, and the Waterslide did not perform as safely as an ordinary customer would expect, although it was being used in a reasonably foreseeable manner (*see id.* ¶¶ 53–57); and (2) the defective design of the Waterslide was the direct and proximate cause of Plaintiff's injury (*see id.* ¶ 58). Alternatively, Count Five of the Complaint alleges a failure to warn claim against Whitewater. (*See id.* ¶¶ 59–67). Specifically, Matthews alleges: (1) Whitewater was responsible for the design and placement of warnings on the Waterslide (*see id.* ¶ 60); (2) the Waterslide did not have sufficient or adequately placed warnings, which rendered it unreasonably dangerous in such a way that was not readily apparent (*see id.* ¶¶ 61–66); and (3) the failure to warn defect was the direct and proximate cause of Plaintiff's injury (*see id.* ¶ 67).

## II.    LEGAL STANDARD

"The doctrine of forum non conveniens permits a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and

private interests, indicate that the action should be tried in a different forum." *Pierre-Louis v. Newvac Corp.,* 584 F.3d 1052, 1056 (11th Cir. 2009).  To obtain dismissal on the grounds of *forum non conveniens*, Defendants must show:

> (i) that an adequate alternative forum is available, (ii) that relevant public and private interests weigh in favor of dismissal, and (iii) that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.  Pertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment.  Relevant public interests include the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally.

*Id.* (quoting *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta,* 530 F.3d 1339, 1356–57 (11th Cir. 2008) (quotations and citations omitted)).  Both private and public interests should be considered in all cases.  *See Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001).  Moreover, in evaluating the private and public interests implicated by the venue of the litigation "the district judge must consider the level of deference to accord the plaintiff's choice of forum."  Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3828 (3d ed. 2007).

### III.    ANALYSIS

Whitewater requests that the Complaint be dismissed on *forum non conveniens* grounds because the accident occurred in the Bahamas, the resort is not a party by virtue of a forum selection clause in a contract executed by the Plaintiff, Plaintiff is not a Florida resident, Whitewater is a foreign corporation with its principal place of business in Canada, the liability and damages witnesses reside outside of Florida, and Plaintiff has added additional defendants who have no relationship to the Waterslide or its maintenance in an effort to create the appearance that Florida is an appropriate forum, when it is not.  (*See* Whitewater Mot. 12).

Cloward echoes Whitewater's arguments.  (*See* Cloward Mot. 12-13).  Matthews urges the Court to deny both Motions given the strong federal interest in affording U.S. citizens the right to choose an American forum for bringing suit, the balance of the private and public interest factors weigh in his favor, and because a dismissal would leave him trying two separate cases in two different countries inasmuch as the other two Defendants have not moved to dismiss this suit. The Court addresses the relevant *forum non conveniens* factors, and the parties' arguments, below.

**A.**    **Adequacy of Alternate Forum**

Matthews does not contest the Bahamas provides an available and adequate forum. Moreover, Defendants assert that they are amenable to process in the Bahamas, and that Bahamian courts are competent to resolve tort claims such as the claims raised here.  (*See* Whitewater Mot. 4–7; Cloward Mot. 5–7; Adams Aff. ¶¶ 4–19  [ECF No. 33-2]).  Therefore, the Court finds the Bahamas provides an available and adequate forum.  *See Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1262–63 (S.D. Fla. 2001).

**B.**    **The Private Interest Factors**

Defendants argue the private interest factors support dismissing Plaintiff's lawsuit under the doctrine of *forum non conveniens*.  (*See* Whitewater Mot. 7–10; Cloward Mot. 7–10).

"Private [interest] factors the district court should consider when analyzing a forum non conveniens claim include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of [the] premises, and the enforceability of a judgment."  *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Renta*, 530 F.3d at 1356).  "These factors are not exhaustive, and the district court should be flexible in applying

them." *Id.* (citing *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381–82  (11th Cir. 2009)).

In balancing the private interest factors, the Court must also account for the "'strong presumption against disturbing . . . [a plaintiff's] initial forum choice.'" *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (quoting *Pain v. United Tech. Corp.*, 637 F. 2d 775, 784 (D.C. Cir. 1980) (alteration added)); *see SME Racks, Inc. v. Sistemas Mecanicos Para Electronica*, *S.A.*, 382 F.3d 1097, 1102 (11th Cir. 2004) (noting that the presumption in favor of a plaintiff's choice of forum "is to be applied specifically when weighing the private interests.") (citation omitted).  As a result, "[a] defendant invoking forum non conveniens 'bears a heavy burden in opposing the plaintiff's chosen forum.'" *Wilson*, 590 F.3d at 1269 (quoting *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007)).  The presumption in favor of a plaintiff's choice of forum is particularly robust, and a defendant's burden is therefore substantially elevated, where the plaintiff is a U.S. citizen.  *See Wilson*, 590 F.3d at 1269  (citing *SME Racks, Inc.*, 382 F.3d at 1100–02).  Indeed, it has been "long mandated that district courts [in the Eleventh Circuit] 'require positive evidence of *unusually extreme circumstances*, and should be thoroughly convinced that *material injustice is manifest* before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'"[4]  *SME Racks*, 382 F.3d at 1101 (quoting *La Seguridad*, 707 F.2d at 1308 n.7)

---

[4] And the presumption favoring a plaintiff's chosen forum is not diminished where the plaintiff chooses to sue in a forum in which he or she does not reside:

> We do not sign on to the proposition that any lesser presumption standard applies to the analysis between a U.S. plaintiff [that is an out-of-state resident bringing suit in the Southern District of Florida] and a foreign defendant. In such a situation, the presumption that *SME* addresses should apply to any U.S. court adjudicating the case of a U.S. plaintiff against a non-U.S. defendant seeking to dismiss the case in favor of a foreign country and a foreign court system. Much like the jurisdictional national contacts test for actions arising under federal law, *forum non conveniens* analysis should be addressed on a national level. The presumption should fully and equally apply in such a case.

(emphasis added); *see Norwood v. Kirkpatrick,* 349 U.S. 29, 42 n.3 (1955) (describing the "near-conclusiveness" that a plaintiff's decision to bring a lawsuit in his home forum has in the *forum non conveniens* analysis).

 1. <u>Private Interest Factor Analysis</u>

  a. *The Access To Evidence Factors*

"Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003).  This interest consists of factors such as "access to proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining witnesses."  *Id.*  Matthews and the Defendants each argue that these factors weigh in their favor.

Defendants assert "the overwhelming majority of the 'material witnesses' regarding liability reside" in the Bahamas, thereby making a trial in the Bahamas more convenient. (Whitewater Mot. 7; Cloward Mot. 8).  In support, Defendants submit affidavits identifying an array of witnesses they intend to call at trial, including the water park manager, engineers, and employees with knowledge of the care, maintenance, and installation of the Waterslide and Pool, in addition to those who witnessed the accident and provided medical and non-medical treatment to Plaintiff.  (*See* Whitewater Aff. ¶ 7 a–n; Cloward Aff. ¶ 12 a–n; *see also* Whitewater Mot. 7–8; Cloward Mot. 8).  Defendants further note that the documentary evidence relevant to the care

---

  Where the U.S. plaintiff who does not reside in the forum district may run into a roadblock is in the particular application of the balance of burdens, where that plaintiff is already agreeing to "travel," if you will, to a jurisdiction where she does not reside. That is where that issue is better addressed. The choice of forum "presumption," however, exists equally from the outset.

*Larsen v. Kerzner Int'l Hotels Ltd.*, 08-22031-CIV-MORENO, 2009 WL 1759585, at *8 (S.D. Fla. June 19, 2009) (alteration added); *see also Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) (noting that forum non conveniens is not "a doctrine that compels plaintiffs to choose the optimal forum for their claim").

and maintenance of the Waterslide and Pool is located in the Bahamas.  (*See* Whitewater Mot. 7–9; Cloward Mot. 7–9).  Matthews maintains, however, that Defendants overstate the extent to which the locus of the present dispute, and concomitantly the important evidence and witnesses in this case, are located in the Bahamas.  Plaintiff submits his own affidavit with a list of witnesses and evidence spread across the Unites States, listing current and former employees of Cloward and EDSA, documents relevant to the design and construction of the Pool, two U.S. eyewitnesses, various U.S. doctors and caregivers, and various medical records located in the United States related to the post-injury care Plaintiff received.[5]  (*See* Matthews Aff. ¶¶ 4–9 [ECF No. 51-1]; Ex. A. to Matthews Aff. [ECF No. 53-1]).

In evaluating the parties' competing lists, the Court must analyze both the quantity and quality of the evidence, which requires a consideration of how each piece of evidence relates to the legal claims and defenses at issue in the case.  *See Ford*, 319 F.3d at 1308. The Court begins with Defendants' list.  Testimony from the Atlantis water park manager, engineers, and employees with knowledge of the care, maintenance, and installation of the Waterslide and Pool, in addition to documents evidencing the same, is asserted to be material because Defendants will defend against Plaintiff's suit by blaming Atlantis for the improper care, maintenance, and installation of the Waterslide and Pool, and making those omissions the actual cause of Plaintiff's injury.  (*See* Cloward Ans., Aff. Def. ¶¶ 8, 11 [ECF No. 16]; Cloward Aff. ¶ 11; Kwasnicki Aff. ¶ 7). The waterpark employees charged with dispatching individuals down the Waterslide and the lifeguard and pool attendants working at the time of Plaintiff's injury are likely to be material because Defendants will also assert that Plaintiff's behavior while riding the Waterslide was improper, and as such, his injury was either entirely, or at least partly, due to his

---

[5] Although Plaintiff also cites to various witnesses and documents located in Canada, this evidence is irrelevant to the access-to-evidence factor analysis since it does not impact the convenience as it relates to the choice between a Bahamian and a U.S. forum.

own doing.  (*See* Cloward Ans. ¶¶ 7, 13).  Finally, testimony from those Bahamian witnesses who provided medical and non-medical treatment to Plaintiff may be relevant to the damages phase of the trial.

Conversely, the U.S. evidence Matthews cites is relevant to proving his legal claims as well as to identifying the scope of the harm he suffered.  The two U.S. eyewitnesses will offer testimony as to whether Matthews followed the instructions he was given and as to the specific events surrounding the accident.  (*See* Matthews Aff. ¶¶ 5–6).  The current and former employees of Cloward located in the United States will offer testimony as to the design, manufacture, and construction of the Pool throughout its various phases of development, and the documents in Cloward's and EDSA's possession will evidence the same.  (*See id.* ¶ 11).  The various U.S. doctors, caregivers, and medical records relate to Plaintiff's calculation of damages.  (*See id.* ¶¶ 7–9).  Although Matthews asserts that EDSA witnesses are relevant (*see* Ex. A. to Matthews Aff.), this is deserving of little weight in the private interest factor analysis.  After Matthews submitted his evidence list, it was later revealed in discovery that EDSA's role in the design of the Pool was limited to the decorative patterns surrounding the edge of the Pool and that EDSA did not have anything to do with the construction of the Pool.  (*See* EDSA Ans. to Interr. 3).  As such, it is unclear what, if anything, testimony from the named EDSA witnesses will add to the present dispute.

The foregoing summary reveals that, as a general matter, the material evidence in this case is split relatively evenly between the United States and the Bahamas.  That does not mean, however, that the access-to-evidence factors are in equipoise.  The Court must consider both the cost and ability of the parties to access the material evidence.

As to the cost-related factor, the difference between a Bahamian and a U.S. forum for the Defendants is likely to be substantial, whereas the difference between a Bahamian and a U.S. forum for Matthews is likely to be less significant.  While Matthews has identified an array of material witnesses located in the United States, none of those material witnesses is located in Florida.  (*See* Whitewater Mot. 8; Cloward Mot. 8–9).  As such, the cost associated with bringing witnesses to Florida is likely to be similar to the cost of transporting those witnesses to the Bahamas; in other words, "[b]y choosing Miami, Florida as the forum in which to litigate . . . any additional burden of traveling to the Bahamas is necessarily marginal in comparison."  *Bell v. Kerzner Int'l Ltd,* No. 10-23755-CIV-SEITZ, 13 (S.D. Fla. July 14, 2011) [ECF No. 55] (citing *Chierchia v. Treasure Cay Services*, 738 F. Supp. 1386, 1388 (S.D. Fla. 1990)); *see also Larsen*, 2009 WL 1759585, at *8 (rejecting the proposition that an out-of-state U.S. citizen's choice of forum receives a lesser presumption than an in-state U.S. citizen, but noting that in the balance of burdens the fact that an out-of-state resident has to travel regardless of where the forum is located may weigh against her).  Conversely, the difference in cost for Defendants as between transporting the Bahamian witnesses to Florida, and not transporting the Bahamian witnesses at all, is likely to be far greater.  With that in mind, the Court therefore finds that the cost factor firmly supports Defendants' position.[6]

The question of how the difference between a U.S and a Bahamian forum impacts the ability of the parties to secure compulsory process over the various witnesses and documents necessary to proving their claims or defenses is a more difficult one, however.  The Court considers first Defendants' arguments with respect to compulsory process over the Bahamian evidence.

---

[6] Given the ease with which documents can be transported in the technological age, the Court affords no weight to the costs associated with the "transportation of documents" as it relates to the claims and defenses of each party.

As Defendants' Motions highlight, most of the Bahamian evidence in this case is not under Defendants' control, but under the control of Atlantis, and Atlantis has not been added to the case.  Thus, Defendants assert that "[b]ecause Atlantis is owned by a foreign corporation and is not subject to this [Court's] jurisdiction it will be difficult if not impossible to subpoena Atlantis' maintenance logs, repair records, and other information indicative of the condition of the subject [W]aterslide [and Pool] at the time of the accident."  (Whitewater Mot. 9; *see* Cloward Mot. 9).  Defendants further argue that "[i]t would be difficult to obtain witnesses to testify because the people with knowledge of the care, maintenance, installation [sic], or who witnessed the accident or provided medical and non-medical treatment to Plaintiff . . . would be located in [t]he Bahamas."  (Whitewater Mot. 8; *see* Cloward Mot. 8–9)  Matthews disputes Defendants' assertions, however, arguing that Defendants are incorrect that the Atlantis entities are not subject to jurisdiction in this Court, and insisting that the witnesses located in the Bahamas may in fact be subpoenaed.  (*See* Resp. to Cloward Mot. 5–7).  In support, Plaintiff points to a range of cases that are pending against the various corporate entities affiliated with Atlantis in the Southern District of Florida, showing that one of those entities, Kerzner International Resorts, Inc., is actually a Florida corporation.  *See Larsen*, 2009 WL 1759585, at *1.

Defendants fail to address Plaintiff's arguments in their written memoranda, and the parties fail to cite to any legal authority or provide any factual support as to the specific question of whether, given Atlantis' corporate structure and relationship to the United States, the Court may assert compulsory process over the witnesses and evidence under Atlantis' control.  Without more, vague assertions of "difficult[y]" and lack of jurisdiction (Whitewater Mot. 8, 9), are insufficient grounds upon which the Court may resolve the question in favor of any of the

parties.  (*See also* Kwasnicki Aff. ¶ 12 (noting that subpoenaing Atlantis' records will be "unnecessarily difficult, expensive, and inconvenient, if at all possible").  Given that Defendants "bear[] the burden of persuasion on all elements of the forum non conveniens analysis," Wright & Miller, *supra* at § 3828.2, and because Defendants have not met that burden, the Court does not afford the issue of compulsory process over Bahamian evidence any weight in the *forum non conveniens* analysis.

The Court next considers the question of compulsory process over the U.S. evidence. Matthews argues that he might "confront obstacles obtaining depositions of all of the United States witnesses without the subpoena power of a court in the United States."  (Resp. to Whitewater Mot. 5; Resp. to Cloward Mot. 5; *see also* Scott Aff. ¶ 6 [ECF No. 51-3]). Defendants do not respond to this argument, and more generally, fail to address the question of compulsory process over U.S. evidence in their respective Motions.  The Court therefore assumes, for purposes of the *forum non conveniens* analysis, that Defendants concede the point. However, because the Court must balance various factors against one another, the Court nonetheless proceeds to analyze Plaintiff's argument to determine how much weight it should be afforded.

At the outset, the Court notes that because the compulsory process inquiry is concerned with unwilling witnesses, the Court disregards Plaintiff's eyewitnesses, who are his fiancée and former employer, in addition to his family members who served as caregivers.  (*See* Matthews Aff. ¶¶ 5–9).  It also appears unlikely that Matthews would need to obtain compulsory process over the various doctors who provided him with medical care; however, even assuming these witnesses are unwilling to travel to the Bahamas, they relate to damages rather than liability  (*see id.*), and therefore the Court affords them slightly less weight.  *See Kahhan v. City of Fort*

*Lauderdale*, 566 F. Supp. 736, 739 (E.D. Pa. 1983) (applying the *Gilbert* factors to a motion to transfer venue and finding that "liability witnesses may be considered of higher quality [than damage witnesses] and their convenience given more weight") (citations omitted); *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004) ("Damage witnesses are accorded less weight [than liability witnesses] due to the fact that without liability, there are no damages to recover") (alteration added) (citing *id.*).

The larger issue here, as Matthews points out, relates to Cloward's "non-employed witnesses and the ability to secure . . . [their] testimony." (Resp. to Cloward Mot. 6). The deposition of Cloward's principal reveals that at least three of Cloward's former project engineers who reside in the United States "spent a good deal of time on site during construction" (Cloward Dep. 15:3–16:5), and two of these witnesses likely "were involved in the testing of the . . . [P]ool" (*id.* 18:24 – 19:2). Given that one of the two grounds upon which Matthews' negligence claim against Cloward is based revolves around Cloward's failure to "properly supervise the construction of the [P]ool[]" (Compl. ¶ 27), the lack of compulsory process over former Cloward employees who were intimately connected with the construction and testing of the Pool could be an issue were the case to be tried in the Bahamas. Based on the foregoing, the Court finds that compulsory process over U.S. witnesses provides modest support for Matthews' position.

   b. *View of the Premises*

Another relevant factor is the "view of premises." *La Seguridad*, 707 F.2d at 1307 (noting that "view of premises" is a relevant factor in the *forum non conveniens* private interest factor analysis). Defendants argue this factor weighs in their favor, emphasizing that "[b]ecause th[e] incident concerned an accident that occurred on [sic] business owner's premises, the ability

to view the premises is relevant." (Whitewater Mot. 7; *see* Cloward Mot. 7–8). Matthews disagrees, insisting that the Pool and the Waterslide can "easily be photographed and sketched." (Resp. to Cloward Mot. 7). Defendants do not address Plaintiff's proposed solution. Because "[D]efendants have not met their burden in showing why the . . . conditions" of the Waterslide and Pool "cannot be sufficiently presented to the jury through photographs," this factor does not add any weight to Defendants' position. *R. Travis Collins v. Marriott International Inc.*, No. 09-22423-CIV-JORDAN, 3 (S.D. Fla. May 11, 2010) [ECF No. 57] (citations omitted); *see also Campbell v. Starwood Hotels & Resorts Worldwide, Inc.*, 07-61744 CIV, 2008 WL 2844020, at *6 (S.D. Fla. July 23, 2008) (noting that "since there is no right to a jury trial in a civil case in the Bahamas, there is no compelling argument to be made . . . that a jury needs to view the scene," and then concluding that "[b]ecause the accident scene can be adequately described and presented to the jury through photographs in . . . [a Florida] [c]ourt, just as it could be in a Bahamian court, th[e] [view of premises] factor does not weigh in favor of the Bahamian forum") (alterations added).

        c.    *All Other Practical Problems*

In addition to the access to evidence factors, the Court may take into account "'all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" *La Seguridad*, 707 F.2d at 1307 (quoting *Gilbert*, 330 U.S. at 508).

Defendants argue their inability to implead the Atlantis entities as third-party defendants is a relevant private interest factor that weighs in their favor. (*See* Whitewater Mot. 10; Cloward Mot. 10). Specifically, Defendants assert they will be unable to implead the owner of Atlantis due to a lack of jurisdiction because: (1) none of the operative facts of this case occurred in Florida; and (2) there is a binding forum selection clause between Plaintiff and the owner of the

Atlantis resort.  (*See* Whitewater Mot. 10; Cloward Mot. 10; Whitewater Repl. 6–7; Cloward Repl. 7).  Both of these arguments must be rejected, however, because, as Matthews points out, the deadline for all motions to join additional parties was February 27, 2012, and neither Defendant sought to join additional parties by the deadline, or even after the deadline.  (*See* Scheduling Order 1 [ECF No. 21]).  Furthermore, although Defendants assert there is a forum selection clause in a contract between Plaintiff and the owner of Atlantis, the forum selection clause has not been provided, and in any event, it is unclear what bearing the clause would have upon non-parties to the contract.

Conversely, Matthews argues the cost of trying the case in the Bahamas would be prohibitive to him given that contingency fee arrangements are not allowed there, and this is a factor that weighs in his favor.  (*See* Resp. to Whitewater Mot. 6–7; Resp. to Cloward Mot. 6–7).  Specifically, Matthews asserts that were the case to be dismissed for *forum non conveniens*, he would not be able to pay the necessary fees and costs and therefore "would absolutely be prevented from pursuing" his case.  (Matthews Aff. ¶ 10).  Defendants do not dispute this assertion; as such, the Court accepts it as true.  Although this factor is not determinative, it favors retaining jurisdiction.  *See, e.g.*, *Wilson*, 590 F.3d at 1272 (holding that financial hardship is a factor to be considered in the balancing of interests that bear on convenience); *Murray v. British Broad. Corp.*, 81 F.3d 287, 292–93  (2d Cir. 1996) (noting that a plaintiff's financial hardship resulting from the absence of contingent fee arrangements is one factor to be weighed in determining the balance of convenience).

        d.     *Balancing the Private Interest Factors*

The enumerated private interest factors, on average, favor Defendants.  The cost factor provides strong support for Defendants' position.   The compulsory process and practical

problems factors provide only modest support for Plaintiff's position.  When weighed against one another, the balance tilts toward Defendants.

Nevertheless, Eleventh Circuit precedent is clear that, when weighing the private interest factors, the scales are not evenly calibrated — the robust presumption in favor of a U.S. citizen is to be applied when balancing the private interest factors.  *See SME Racks*, 382 F.3d at 1102 (noting that "the presumption in favor of the plaintiffs' choice of forum . . . is to be applied specifically when weighing the private interests") (citation omitted); *Wilson*, 590 F.3d at 1270. Under these circumstances, a defendant seeking to dismiss a case for *forum non conveniens* must do more than just prove the private interest factors favor dismissal; rather, he or she must prove that "'unusually extreme circumstances'" are present, and "thoroughly" persuade the Court "that material injustice" would result if it retained jurisdiction.  *SME Racks*, 382 F.3d at 1101 (quoting *La Seguridad*, 707 F.2d at 1308 n.7).  Based upon the above-described balancing — and the Court's conclusion that the enumerated factors only slightly support Defendants — Defendants clearly have not met their burden.  Defendants' failure to identify the proper legal standard or specifically show that this standard has been met only bolsters this conclusion.  *Cf.* Wright & Miller, supra at § 3828.2 ("Federal courts are unanimous in concluding that the defendant bears the burden of persuasion on all elements of the forum non conveniens analysis.").  The Court therefore finds the private interest factors favor retaining jurisdiction.

### C.   The Public Interest Factors

Even where the private interest factors weigh against dismissal for *forum non conveniens*, a court should nonetheless consider the public interest factors as well.  *See Leon*, 251 F.3d at 1311.  "The public interest factors in the *forum non conveniens* analysis include: a) administrative congestion resulting from cases being tried at a site other than that of their origin;

b) the burden of jury duty on a community that has no relationship to the cause of action; c) the chosen forum's interest in the dispute; d) the alternative forum's interest in the dispute; and e) the difficulties associated with applying foreign law. *Sun Trust Bank*, 184 F. Supp. 2d at 1265–66 (citing *Gulf Oil,* 330 U.S. at 508–09).

Defendants argue the following public interest factors weigh in favor of dismissal. First, Matthews has not presented any evidence regarding the congestion of the Bahamian courts, and the Bahamas has been held by other courts to be an adequate and available forum. (*See* Whitewater Mot. 10; Cloward Mot. 11). Second, the case has no "meaningful connection" to Miami given that the incident occurred in the Bahamas; Matthews is an Arizona resident and was a resident of Ohio at the time of the alleged incident; and the design, manufacturing, delivery, care, and maintenance of the Waterslide all took place outside of Florida. (Whitewater Mot. 10–11; Cloward Mot. 10–11). Third, Bahamian law would apply to the claims and defenses. (*See* Whitewater Mot. 11; Cloward Mot. 11). Fourth, it would be unfair to impose jury duty on a South Florida jury. (*See* Whitewater Mot. 11; Cloward Mot. 12).

According to Matthews, the question of court congestion relates to the home forum rather than the foreign forum, and is in any event entitled to minimal weight in the public interest factor analysis. (*See* Resp. to Whitewater Mot. 8; Resp. to Cloward Mot. 8). Second, because the case concerns a controversy between a U.S. citizen and multiple defendants, some of which are foreign companies doing business not only in the United States but specifically in Florida, the federal courts have an interest in the litigation. (*See* Resp. to Whitewater Mot. 8; Resp. to Cloward Mot. 8). Third, Plaintiff argues that dismissing the case on behalf of Whitewater and Cloward would result in a bifurcation of the case, since the suit against the two Defendants that have not sought dismissal would remain here. (*See* Resp. to Whitewater Mot. 9; Resp. to

Cloward Mot. 9).

The Court addresses the parties' respective positions *seriatim*.

1.   <u>Administrative Congestion</u>

With respect to Defendants' administrative congestion argument, the Court agrees with Matthews that the proper emphasis of the public interest factor analysis is on the home forum, and "'the fact that the Southern District of Florida has one of the busiest dockets in the United States is entitled to little or no weight in the analysis.'" *Campbell*, No. 2008 WL 2844020, at *8 (citing *Morse v. Sun Int'l Hotels*, *Ltd.*, 98-7451-CIV, 2001 WL 34874967, at *6 (S.D. Fla. Feb. 26, 2001); *see Larsen*, 2009 WL 1759585, at *12 (noting that the administrative difficulty and court congestion factor is afforded little or no weight). The Court therefore finds that although this public interest factor favors Defendants, it adds little weight to the analysis.

2.   <u>The Burdens Associated with Jury Duty and Application of Foreign Law</u>

As to Defendants' jury duty and foreign law public interest factor arguments, the Court notes that Matthews fails to address either. As such, Plaintiff concedes them, and the Court assumes them as correct. These two factors weigh in favor of Defendants, albeit modestly.[7] *See SME Racks, Inc.*, 382 F.3d at 1101 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."); *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937–38 (11th Cir. 2005) (citing *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1520 (11th Cir. 1985) ("The need to apply foreign law is a public-interest factor that mitigates strongly in favor of dismissal.")). But as even Defendants acknowledge, the burden of jury duty

---

[7] Defendants' argument that the case has no "meaningful connection" to Miami is relevant to the public interest factor analysis only to the extent that it supports Defendants' argument regarding the burdens of jury duty. As a general matter, "federal courts, in the *forum non conveniens* context, do not focus on the connection between the case and a particular state, but rather on the connection of the case to the United States as a whole." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1303 (11th Cir. 2002) (citation omitted).

is "a lesser weighted factor" (Whitewater Mot. 12; *see* Cloward Mot. 12); and moreover, because of the similarities between Bahamian law and Florida law, the weight of the foreign law factor is also substantially mitigated.  *See R. Travis Collins*, No. 09-22423-CIV-JORDAN, 6 [ECF No. 57] ("I do not find that this court will face substantial difficulties in applying Bahamian law . . . because Bahamian law is in English, is derived from English common law, and has many similarities to American law, including recognizing certain theories of negligence.") (citing *Sun Trust*, 184 F. Supp. 2d at 1263 (noting the similarities between Bahamian law and Florida law)); *Morse*, 2001 WL 34874967, at *7 (noting that the impact of the foreign law public interest factor was mitigated: (1) because "federal courts are often called upon to apply foreign law"; and (2) because "Bahamian law is derived from English common law") (citations omitted); *Larsen*, 2009 WL 1759585, at *12 (same).

> 3.   <u>The Sovereign Interests</u>

With respect to Plaintiff's sovereign interest argument, Defendants acknowledge that "[t]he United States has an interest in providing a forum for its citizens who seek redress from injuries caused by foreign defendants," but aver that "this is not license for a resident of one state to shop for the best forum they [sic] can find," and that the *Bell* case supports Defendants' position.  (Whitewater Repl. 7–8; *see* Cloward Repl. 8).  The Court agrees with Plaintiff that the federal courts have an interest in adjudicating Plaintiff's suit.  Defendants' counterarguments fail to persuade.

Eleventh Circuit precedent is "clear that '[t]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction.'"  *SME Racks, Inc.*, 382 F.3d at 1104 (quoting *Esfeld*, 289 F.3d at 1311); *see also Burt v. Isthmus Dev. Co.*, 218 F.2d

353, 356 (5th Cir. 1955) ("This nation has historically been most solicitous of its citizens' welfare and its courts exist as much for the adjudication of its citizens' controversies as for the enforcement of its laws."). Where, as here, Plaintiff is a U.S. citizen, that strong federal interest is in play. The Court therefore rejects Defendants' forum shopping suggestion given that it confuses the sovereign interests implicated in the *forum non conveniens* analysis with the more localized interests implicated by the federal venue analysis.

Conversely, the interest of the Bahamian courts is comparatively weak. This is not a case, such as the cases cited in Defendants' Motions, where all of the tortious conduct alleged occurred entirely in the foreign forum being proposed. *See, e.g., Morse*, 2001 WL 34874967, at *1 (case involving Bahamian hotels' allegedly negligent selection and supervision of the vendors who operated recreational water sports activities on the beach); *Colantono v. Hilton Int'l Co.*, No. CIV.A. 03-1833, 2004 WL 1810291, at *10 (E.D. Pa. Aug. 13, 2004) (case involving a controversy over "the proper maintenance of an Italian hotel room"); *Miyoung Son v. Kerzner Int'l Resorts, Inc.*, 07-61171-CIV, 2008 WL 4186979, at *1 (S.D. Fla. Sept. 5, 2008) (case involving the allegedly negligent operation of a boat in the Bahamas). The Court disagrees with Defendants that the present dispute "is remarkably similar to the *Bell* case wherein a California Plaintiff attempted to assert a claim against a foreign corporation in the Southern District of Florida where the subject 'harm' occurred in the Bahamas." (Whitewater Repl. 7–8; *see* Cloward Repl. 8). The *Bell* court itself noted that "the particular crux of th[e] dispute [wa]s the scope of a Bahamian hotel's duty to obtain medical attention for its guests," *Bell*, No. 10-23755-CIV-SEITZ, 23 [ECF No. 55], thereby distinguishing *Bell* from the present case, where the crux of the dispute is the scope of an American and a Canadian corporation's duty to safely design pools and

waterslides in the United States and Canada.[8]  As such, the federal interest is substantially more significant in the context of this lawsuit than in the other examples cited by Defendants.  The Court therefore finds that the sovereign interest factor weighs strongly in favor of retaining jurisdiction.

4.    Balancing the Public Interest Factors

In sum, the Court finds that the strong federal interest in providing U.S. citizens with a forum for their suits and the minimal interest of the Bahamian courts outweigh the administrative congestion, jury duty burden, and foreign law public interest factors. *See Campbell*, 2008 WL 2844020, at *8 (finding the public interest factors weighed in favor of retaining jurisdiction where: (1) "[t]he interests of the Bahamian courts . . . relate[d] only to the fact the accident [at issue] took place" in the Bahamas; (2) "[t]he Defendants [we]re international corporations who [we]re susceptible to jurisdiction in both the Bahamas and the United States"; (3) "the [p]laintiff [wa]s a United States citizen who was simply on vacation in the Bahamas when the accident occurred"; and (4) where "Bahamian law would apply"); *R. Travis Collins*, No. 09-22423-CIV-JORDAN, 5-6 [ECF No. 57] (finding the public interest factors weighed in favor of retaining jurisdiction where "the Bahamas has a stake in the efficient resolution of lawsuits involving accidents occurring on its soil," because it was "outweighed . . . by the interest in providing an American plaintiff an American forum . . .  where all 6 defendants are corporations, 3 are international corporations that are citizens of Maryland, and only 2 are citizens of the Bahamas," notwithstanding the possibility of having to apply Bahamian law) (citing *id.*)).  The public interest factors therefore weigh in favor of retaining jurisdiction.

---

[8] To be precise, Plaintiff's claims involve both tortious conduct alleged to have occurred outside of the Bahamas — the allegations of defective design and improper warnings — and tortious conduct alleged to have occurred in the Bahamas as well — the allegations of Cloward's negligent oversight of construction. In all instances, however, the claims of tortious conduct are alleged to have been committed by non-Bahamian defendants.

## IV.   CONCLUSION

Although the Bahamas provides an available and adequate forum, neither the private interest factors nor the public interest factors support dismissing the case for *forum non conveniens*.  Because Plaintiff is a U.S. citizen, Defendants were required to bring forth "positive evidence of unusually extreme circumstances" and show that "material injustice" will result if the Court retains jurisdiction.  *SME Racks*, 382 F.3d at 1101 (internal quotations and citations omitted).  Defendants have not met their burden.  Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Whitewater's Motion **[ECF No. 33]** and Cloward's Motion **[ECF No. 42]** are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of May, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record