UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-24424-CIV-ALTONAGA/Simonton

**DAVID MATTHEWS**,

    Plaintiff,

vs.

**WHITEWATER WEST INDUSTRIES, LTD.**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant, Whitewater West Industries, Ltd.'s ("Whitewater['s]") Amended Motion for Reconsideration . . . ("Motion for Reconsideration" or "MFR") [ECF No. 111] and Amended Motion for Summary Judgment . . . ("Motion for Summary Judgment" or "MSJ") [ECF No. 110] (collectively, "Motions"), filed October 11, 2012. The Court has carefully considered the parties' written submissions and applicable law.

### I. BACKGROUND

Prior to addressing the legal issues raised by Whitewater's Motions, the undersigned summarizes the relevant background and procedural facts.

**A. Whitewater's Statements of Material Facts**[1]

Each of Whitewater's Motions contains a Statement of Material Facts (collectively "Statements" or "SMFs"), each of which is nearly identical to the other.[2] The facts contained in

---

[1] The facts set forth in this section are undisputed.

[2] The only difference between the two Statements is that the Statement in support of the Motion for Summary Judgment contains additional paragraphs discussing: (1) the discharge clause contained in two

the Statements can be divided into two categories: those that are based upon the allegations of the Complaint [ECF No. 1], and those based upon various exhibits attached to the Motions.

*i. Allegation-Based Facts*

This is an action by a resort guest, David Matthews ("Matthews"), against a waterslide manufacturer, Whitewater, among other defendants, based upon injuries the resort guest suffered while riding a waterslide ("Waterslide") at the Atlantis Resort ("Atlantis") in The Bahamas. (*See* SMFs ¶ 1). On December 8, 2011 Matthews filed his Complaint against Whitewater.

Matthews suffered his injury on December 11, 2009, while a guest of Atlantis. (*See id.* ¶ 4 (citing Compl. ¶ 16)). Atlantis operates and supervises the use of the Waterslide on its premises, encouraging guests to use it. (*See id.* ¶ 12 (citing Compl. ¶ 16)). The Waterslide features two adjacent waterslides that allow guests to race to the bottom. (*See id.* ¶ 5 (citing Compl. ¶ 18)). Prior to using the Waterslide, an Atlantis employee provided Matthews instructions regarding how to properly use it. (*See id.* ¶ 6 (citing Compl. ¶ 19)). At the end of the ride, Matthews was injured when his legs hit the bottom of the pool the Waterslide emptied into, thereby causing him to suffer a tibia plateau fracture. (*See id.* ¶ 7 (quoting Compl. ¶ 19)). Whitewater was responsible for the manufacturing and/or construction and maintenance of the Waterslide. (*See id.* ¶ 13 (citing Compl. ¶ 14)).

Based on his injuries, Matthews brings tort claims against various defendants, including Whitewater. (*See id.* ¶ 8). Only those claims against Whitewater — Counts Four and Five of the Complaint for strict products liability — are at issue in the present Motions. Count Four alleges strict liability for defective design, stating that: (1) Whitewater defectively designed the Waterslide in such a way that it was rendered unreasonably dangerous, and the Waterslide did

---

Releases signed by Matthews (*see* Exs. 1 & 2 [ECF Nos. 110-1 & 111-1]) (*see id.* ¶ 19); and (2) an Affidavit [ECF No. 110-1] from Robert K. Adams ("Adams"), a Bahamian attorney (*see id.* ¶ 20).

not perform as safely as an ordinary customer would expect, although it was being used in a reasonably foreseeable manner (*see id.* ¶ 11 (citing Compl. ¶¶ 53–57)); and (2) the defective design of the Waterslide was the direct and proximate cause of Matthews' injury (*see id.* ¶ 10 (citing Compl. ¶ 58)). Count Five alleges a failure to warn claim, stating that: (1) Whitewater failed to place sufficient or adequate warnings on the Waterslide, which rendered it unreasonably dangerous in a manner that was not readily apparent (*see id.* ¶ 11 (citing Compl. ¶¶ 61–66)); and (2) the failure to warn defect was the direct and proximate cause of Matthews' injury (*see id.* ¶ 1 (citing Compl. ¶ 67)).

### ii. Exhibit-Based Facts

Having outlined the foregoing allegations, Whitewater discusses two Releases, attached to each of the Motions, which are signed by Matthews. (*See id.* ¶¶ 15–17). The Releases are newly-discovered evidence, received by Atlantis in July 2012. (*See id.* ¶ 18). The first Release is dated December 9, 2009 — prior to the accident and during the same stay during which Matthews was injured — while the second Release is dated December 8, 2010 — approximately one year after the accident and during a subsequent stay at Atlantis by Matthews. (*See id.* ¶¶ 15–17).

The Releases state:

> I agree, on behalf of myself and the members of my traveling party listed below, to assume all risks incidental to participation in the Activities (which risks may include, among other things, muscle injuries and broken bones, drowning, seasickness, sea-creature attack, or death) and, on my own behalf and on behalf of the members of my traveling party and on behalf of my and their heirs, executors and administrators, to release and forever discharge the "Resort Parties" (defined below) of and from all liabilities, claims, actions, damages, costs or expenses, of any nature arising out of or in anyway connected with our participation in the Activities, and further agree to indemnify and hold each of the Resort Parties harmless against any and all such liabilities, claims, actions, damages, costs or expenses, including but not limited to, all attorney's fees and disbursements.

(Releases 1).  The Releases define the "Resort Parties" as

> Kerzner International Holdings Limited, Kerzner International Limited, Kerzner International Bahamas Limited, Atlantis Holdings (Bahamas) Limited, Ocean Club Holdings Limited, Paradise Island Holdings Limited, Paradise Island Limited, Island Hotel Company Limited, and Paradise Enterprises Limited, Harborside at Atlantis Development Limited and Harborside at Atlantis Management Limited, along with their parent, related and affiliated companies at every tier, and the officers, directors, employees, agents, representatives, successors and assigns of each of the foregoing entities.

(*Id.*).  The Releases contain the following forum selection and choice of law clause:

> I agree that any claims I may have against the Resort Parties resulting from any events occurring in The Bahamas shall be governed by and constructed in accordance with the laws of the Commonwealth of The Bahamas, and further, I irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever.

(*Id.*).

The Statement in support of the Motion for Reconsideration concludes with a discussion of the Releases.  (*See* MFR-SMF ¶ 20).  The Statement in support of the Motion for Summary Judgment, however, discusses one additional exhibit that is only attached to that Motion: the Adams Affidavit.  (*See* MSJ-SMF ¶ 22).  Adams, an attorney who has been licensed to practice law in The Bahamas since 1994, is a partner of "one of the oldest and most respected law firms" in The Bahamas.  (Adams Aff. ¶ 3).

Adams offers two points for the Court's consideration.  The first is included in Whitewater's Statement:

> Under Bahamian law, Strict Product [sic] Liability is not recognized as a cause of action and, [sic] Defendant [], would not be held liable to the Plaintiff in respect of the claims for damages for Strict Products Liability, pleaded in this action, under Bahamian law.

(MSJ-SMF ¶ 22 (quoting Adams Aff. ¶ 4) (internal quotation marks omitted)).  The second point, which is left out of the Statement, clarifies that

> [w]hile, [sic] the Strict Products Liability claims pleaded in this action are not recognized causes of action under Bahamian law, the same allegations of fact could be properly advanced in support of a different liability theory in tort that would give rise to a recognized cause of action under Bahamian law.

(Adams Aff. ¶ 5).

**B. Previously-Filed Motions**

Approximately six weeks after Matthews filed the Complaint, Whitewater filed a Motion to Dismiss for *Forum Non Conveniens* ("Motion to Dismiss") [ECF No. 33]. In the Motion, Whitewater maintained the Complaint should be dismissed because the accident occurred in The Bahamas; Atlantis was not a party to the lawsuit; Matthews was not a Florida resident; Whitewater was a foreign corporation with its principal place of business in Canada; the liability and damages witnesses resided outside of Florida; and Matthews had added additional defendants who have no relationship to the Waterslide or its maintenance in an effort to create the appearance that Florida was an appropriate forum, when it is not. (*See generally* Mot. to Dism.). Matthews opposed the Motion, arguing the strong federal interest in affording U.S. citizens the right to choose an American forum for bringing suit, the balance of the private and public interest factors weighed in his favor, and because a dismissal would leave him trying two cases in two different countries inasmuch as the other defendants in the case had not moved to dismiss the suit. (*See generally* Resp. to Mot. to Dism. [ECF No. 51]). On May 8, 2012, the Court issued an Order [ECF No. 76] denying Whitewater's Motion to Dismiss.

Thereafter, on July 17, 2012, Whitewater filed a Motion for Judgment on the Pleadings ("Motion for Judgment") [ECF No. 97]. Whitewater maintained it was entitled to judgment because Matthews' strict liability claims had to be dismissed under Bahamian and Florida law. Specifically, Whitewater argued that Bahamian law did not recognize a cause of action for strict products liability. Whitewater further maintained it was entitled to judgment under Florida law

because "'[p]rinciples of strict products liability do not apply to structural improvements to real property,'" and the Waterslide constitutes a structural improvement to real property. (*Id.* 4 (quoting *Craft v. Wet 'N Wild, Inc.*, 489 So. 2d 1221, 1222 (Fla. 5th DCA 1986))). Matthews responded that Whitewater had failed to establish that Bahamian law did not recognize a cause of action for strict products liability, and, moreover, the Waterslide was not a structural improvement to real property under Florida law. (*See generally* Resp. to Mot. for Judg. [ECF No. 105]). Matthews also argued judgment was inappropriate because Whitewater had "failed to show based on the pleadings that no material issues of fact exist." (*Id.* 4). On August 28, 2012, the Court issued an Order [ECF No. 107] denying the Motion for Judgment on the basis that Whitewater had failed to establish that either Bahamian law or Florida law would not recognize Matthews' claims. The Court explained that the parties' failure to brief the choice of law issue underlying the lawsuit required the undersigned to dispose of the Motion for Judgment under both jurisdictions' laws.

Approximately six weeks later, on October 11, 2012, Whitewater filed the present Motions. Whitewater's Motion for Reconsideration seeks reconsideration of the May 8, 2012 Order, while the Motion for Summary Judgment seeks to re-litigate many of the same issues addressed in the August 28, 2012 Order. On November 8, 2012, Matthews filed Responses to the Motions (*see* Resp. to MFR [ECF No. 119]; Resp. to MSJ [ECF No. 120]). Matthews does not take issue with any of the factual allegations contained in the Motions; he only disputes their legal implications. On November 19, 2012, Whitewater filed its Replies (*see* MFR Repl. [ECF No. 124]; MSJ Repl. [ECF No. 123]). The Court addresses the parties' legal arguments below.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986)). "Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1342 (S.D. Fla. 2007) (quoting *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993)) (internal quotation marks omitted). The reconsideration decision is granted only in extraordinary circumstances and is "committed to the sound discretion of the district judge." *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp. 2d 1286, 1301 (M.D. Fla. 2006) (quoting *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985)) (internal quotation marks omitted).

### B. Motion for Summary Judgment

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In making this determination, "the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is material if it is a legal element of the claim under the applicable

substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted). A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

Whitewater's Motion for Reconsideration argues that the Releases' forum selection clause requires dismissal in favor of The Bahamas. The Motion for Summary Judgment argues that the Releases' choice of law clause requires the application of Bahamian law, which does not recognize a cause of action for strict products liability; or, alternatively, that Matthews cannot maintain a cause of action for his injury because the Releases contain a discharge of liability clause.

**A. Whitewater's Motion for Reconsideration**

According to Whitewater, the forum selection clause constitutes newly-discovered evidence, effects a change in controlling law, and evidences that manifest injustice will occur unless the Court dismisses the lawsuit. (*See* Mot. for Recons. 1). These arguments turn upon Whitewater's view that it "qualifies as an employee, agent and representative of The Resort Parties," such that the forum selection clause contained in Releases should apply to Matthews' claims. (MFR 8 (footnote call number omitted); *see* MFR Repl. 2–3).

Matthews does not dispute that the Releases constitute newly-discovered evidence or that the Court can properly consider them on a motion for reconsideration. (*See generally* Resp. to MFR). Matthews disagrees, however, that the Releases are enforceable because Whitewater has

not presented any evidence that: (1) Matthews signed the Releases with knowledge of their contents; (2) Matthews had prior notice he would have to sign the Releases; or (3) the Releases were reasonably communicated. (*See id.* 2–3). Mathews further maintains that the Releases are not applicable to Whitewater, as Whitewater "fail[s] to provide a shred of proof that it is a 'Resort Party' as contemplated by the plain language of the Kerzner forum selection clause." (*Id.* 2).

The parties' arguments raise two overarching issues: first, are the Releases enforceable, and second, do they apply to Whitewater? As to the first, the Court agrees with Whitewater that the forum selection clause is enforceable. Under Eleventh Circuit precedent, "[f]orum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (internal quotation marks and citations omitted). Further, courts in this Circuit routinely uphold forum selection clauses just like the forum selection clause at issue here. *See, e.g., id.*; *Miyoung Son v. Kerzner Int'l Resorts, Inc.*, 07-61171-CIV, 2008 WL 4186979, *7 (S.D. Fla. Sept. 5, 2008). It is therefore incumbent upon Matthews to explain why enforcement under the particular circumstances of this case would be unreasonable. Yet Matthews takes precisely the opposite position in his Response, arguing the Motion for Reconsideration should be denied because Whitewater has failed to present evidence as to why the forum selection clause is enforceable. (*See* Resp. 2–3). Matthews thus fails to present any argument or evidence as to why enforcement would be unfair or unreasonable under the circumstances. Because Matthews fails to make the requisite "strong showing," *Krenkel*, 579 F.3d at 1281, the Court assumes, for purposes of the instant Motion, that the forum selection clause is enforceable.

The next issue is whether Whitewater is entitled to the protection of the forum selection clause. To justify reconsideration and obtain dismissal under the forum selection clause, the Releases must apply to Whitewater. This is less than clear, however, because the Releases only apply to the "Resort Parties," and it is not obvious from the definition offered in the Releases that Whitewater is, in fact, a Resort Party. Again, the Releases define the Resort Parties as the "officers, directors, employees, agents, representatives, successors and assigns" — as well as the "parent, related and affiliated companies" — of the following entities ("Entities"):

> Kerzner International Holdings Limited, Kerzner International Limited, Kerzner International Bahamas Limited, Atlantis Holdings (Bahamas) Limited, Ocean Club Holdings Limited, Paradise Island Holdings Limited, Paradise Island Limited, Island Hotel Company Limited, and Paradise Enterprises Limited, Harborside at Atlantis Development Limited and Harborside at Atlantis Management Limited . . . .

(Releases 1).

Whitewater's position on the issue is that the allegations in the Complaint demonstrate Whitewater qualifies as a Resort Party. To make its case, Whitewater first notes that Matthews "alleges that at all times material Whitewater was responsible for the manufacturing and/or construction and maintenance of [the] Waterslide." (SMF ¶ 13 (citing Compl. ¶ 14)) (footnote call number omitted). In the next paragraph, Whitewater essentially reiterates the same point:

> Plaintiff alleges that Whitewater was responsible for the manufacturing and/or construction and maintenance of The Challenger Waterslide, which was operated and supervised by the Atlantis Resort upon the Atlantis Resort's premises, and which guests were encouraged to ride. . . . Essentially, Plaintiff has alleged that Whitewater has an agency relationship with the Atlantis Resort.

(*Id.* ¶ 14 (citing Compl. ¶¶ 14, 16) (footnote call number and internal citations omitted)).[3]

---

[3] Whitewater adds in a footnote that although it "refutes" Matthews'

> allegations as it pertains to maintenance [of the Waterslide], in assessing these facts, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must

10

There are, to be sure, a variety of problems with Whitewater's argument. Whitewater, as the party moving for reconsideration of an earlier order, has the burden to establish the facts that support its Motion. *See Moten v. Broward County, Fla.*, No. 10-62398-CIV, 2012 WL 664241, at *1 (S.D. Fla. Feb. 28, 2012) (quoting *Reyher v. Equitable Life Assur. Soc. of U.S.*, 900 F. Supp. 428, 430 (M.D. Fla. 1995)) (noting that the moving party on a motion for reconsideration must "demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.") (internal quotation marks omitted). Yet Whitewater has presented no actual facts that pertain to the relationship between Whitewater and the Entities; it only points out what *Matthews alleges in the Complaint* as to that relationship. Thus, Whitewater's Statement does not actually assert facts bearing on the resolution of who the Resort Parties are. For this reason alone, the Motion for Reconsideration might be denied.

Even assuming the Court was to accept Whitewater's characterization of the allegations as "facts," the Motion for Reconsideration still fails. Whitewater states that, according to Matthews' allegations, Whitewater qualifies as an "employee, agent and representative of The Resort Parties." (MFR 8 (footnote call number omitted); *see also* MFR Repl. 2–3). Such allegations are nowhere to be found in the Complaint. Matthews only alleges that Whitewater

---

resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir. 1990).

(SMFs ¶ 13 n.1; *see* SMFs ¶ 14 n.2). This argument is incoherent. On the one hand, Whitewater asserts that Matthews alleges Whitewater is responsible for maintenance of the Waterslide. On the other hand, Whitewater asserts it is not actually responsible for maintenance of the Waterslide. Notwithstanding both of these assertions, Whitewater argues the Court should accept as a material fact that Whitewater is responsible for maintenance of the Waterslide because of the summary judgment standard. Under the summary judgment standard, however, the Court can only conclude this fact is disputed, because Whitewater itself "refutes" it.

was responsible for "designing, selecting parts and materials for, developing, manufacturing, assembling, packaging, testing, advertising, marketing and selling" the Waterslide, "which was part of the water park facilities of the Atlantis Resort . . . ." (Compl. ¶ 51). These allegations do not establish, by their own terms, the relevant classification of Whitewater's relationship with the Entities as it pertains to the sale of the Waterslide. Nor does Whitewater offer any legal argument to clarify the issue, instead providing the Court with mere conclusory statements and bald assertions. (*See, e.g.,* MFR 8 ("Defendant Whitewater qualifies as an employee, agent and representative of The Resort Parties and the choice of law and venue provision should apply to this proceeding.") (footnote call number omitted)); (MFR Repl. 2 ("The plain language of the Releases speak for themselves and are rather broad. Whitewater at minimum qualifies as an agent or affiliated company.")). Thus, Matthews is correct that Whitewater simply

> points to a single boilerplate line [sic] the forum selection clause and is asking the Court to make the legal determination that it is in fact an agent or representative of the Kerzner companies. W[hitewater] is asking the Court to extend the forum selection clause to protect them, when there is no evidence that the forum selection clause was meant [sic] contemplates W[hitewater] or any other entity not in the Kerzner family of companies.

(Resp. to MFR 3).

Because Whitewater has failed to meet its burden of "set[ting] forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision," *Moten*, 2012 WL 664241, at *1 (quoting *Reyher*, 900 F. Supp. at 430) (internal quotation marks omitted), reconsideration is not warranted.

**B. Motion for Summary Judgment**

At the heart of Whitewater's Motion for Summary Judgment are two similar Release-based arguments. Whitewater asserts it is entitled to judgment because the Releases require the application of Bahamian law, which does not recognize a cause of action for strict products

liability. Whitewater further contends that the Releases discharge Whitewater of any and all liability. Like Whitewater's Motion for Reconsideration, each of these arguments turns upon whether Whitewater qualifies as a Resort Party.

A district court can only grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In making this determination, the Court must view all evidence and make all reasonable inferences in favor of the non-movant. *See Chapman*, 229 F.3d at 1023 (citation omitted). Applying these principles to the instant Motion, Whitewater's argument that it qualifies as a Resort Party must be rejected here for the exact reason it was previously rejected: there is a lack of evidence as to Whitewater's relationship with the Entities and the absence of any explanation as to why Whitewater qualifies as an agent, employee, or representative under the Releases. Thus, "resolv[ing] all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citations omitted), the Court cannot conclude, for purposes of the instant Motion, that Whitewater qualifies as a Resort Party, thereby precluding the application of the choice-of-law and discharge of liability clauses contained in the Releases.

Having reached this conclusion, Whitewater's second argument — that it is entitled to summary judgment because the Releases discharge Whitewater of all liability — necessarily fails. So, too, does Whitewater's first argument, although it requires a bit more analysis. Whitewater's first argument rests upon two prongs: (1) that "[t]he mandatory choice of law provision require[s] Bahamian law be applied," and because (2) "Bahamian Law does not recognize a cause of action [for] strict products liability." (MSJ 9). The first prong of

Whitewater's argument clearly is no longer tenable, as it has not been established that the Releases apply to Whitewater. But this raises the question as to whether the second prong — that Bahamian law does not recognize a cause of action for strict products liability — could, if true, enable Whitewater to prevail on its Motion.

The Court previously addressed this issue in its August 28, 2012 Order, explaining that: (1) it was unclear under choice of law principles whether Bahamian law or Florida law was applicable to Matthews' claims; (2) without briefing on the issue — given the multi-factor nature of the choice of law analysis in Florida — the Court would not resolve it for the parties; and (3) this meant that in order for Whitewater to prevail on its Motion for Judgment on the Pleadings, Whitewater would need to prove that both Florida and Bahamian law would not recognize Matthews' claims. (*See Id.* 4–5). Incredibly, once again Whitewater has failed to address the outstanding choice of law issue, having relied upon the choice of law clause contained in the Releases to establish the applicability of Bahamian law rather than the significant relationships test applied in Florida. *See Chierchia v. Treasure Cay Services*, 738 F. Supp. 1386, 1389 (S.D. Fla. 1990) (citing *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980)). This oversight defeats the second prong of Whitewater's first argument for purposes of resolving the Motion for Summary Judgment; even assuming Bahamian law does not recognize Matthews' claims, it is unknown whether Bahamian law applies to the lawsuit. Whitewater's assertion based upon Bahamian law thus fails to persuade.

Accordingly, summary judgment is not appropriate.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Whitewater's Motion for Reconsideration **[ECF No. 111]** and Motion for Summary Judgment **[ECF No. 110]** are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of December, 2012.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record